## TOLEDO, ST. L. & W. R. CO. v. SELLERS.

### (Circuit Court of Appeals, Seventh Circuit.   January 10, 1911.)

### No. 1,723.

APPEAL AND ERROR (§ 1195*)—REVERSAL—LAW OF THE CASE.

Where a judgment for plaintiff is reversed on appeal for error in denying defendant's motion for a peremptory instruction at the close of the evidence, such decision, though not concurred in by the whole court, is the law of the case on retrial, requiring the granting of a similar motion, unless the evidence is such as to change the state of facts to which the law in the previous case was applied, until the decision of the Circuit Court of Appeals is reversed by the Supreme Court, either on certiorari or certified questions.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4661–4665; Dec. Dig. § 1195.*]

In Error to the Circuit Court of the United States for the Eastern District of Illinois.

Action by Ambrose Sellers, as administrator of the estate of Edwin J. Hair, deceased, against the Toledo, St. Louis & Western Railroad Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

Charles A. Schmettau and H. M. Steely (Clarence Brown, of counsel), for plaintiff in error.

Henry A. Neal, for defendant in error.

Before GROSSCUP, BAKER, and SEAMAN, Circuit Judges.

GROSSCUP, Circuit Judge, delivered the opinion:

This case was in this Court, before, 177 Fed. 152, 100 C. C. A. 572, where the facts are fully stated. The principal assignment of error is that plaintiff in error's motion for a peremptory instruction, made at the close of the evidence, was overruled. Unquestionably, this instruction should have been given, unless there was evidence at this hearing not in the previous case, tending to change the state of facts to which the law in the previous case was applied by this Court.

After stating the facts in detail, the opinion, in the previous hearing, proceeds:

"As appears from the above statement of facts, after signalling the engineer to slack forward and backward several times in an attempt to effect a coupling, the decedent, while the drawbars were eighteen inches or two feet apart, gave a quick signal to back which the engineer instantly obeyed, but not before decedent had placed himself between the drawbars. We can conceive of but three possible explanations for decedent's conduct; first, he may have deliberately placed himself in the position in which he was killed. This would be suicide and is not to be presumed. The presumptions are against it. Second: He may have attempted to pass to the other side of the drawbars after giving the signal to back, and thus got caught. The closeness of the drawbars together when the signal was given and his position when found might indicate an effort to pass through sidewise. Or, third: he may have given the wrong signal; that is, he may have intended to give the signal to pull forward, may have thought he had done so and then gone in to examine the coupling further. If the accident happened in any one of these ways, there can be no recovery. Indeed, upon any possible view of the case made

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

by the evidence the decedent was guilty of negligence which contributed to his own injury and death."

From this there was a dissent (the writer of this opinion), the gist of which was as follows:

"The decedent's experience in railroading had not extended beyond thirty days. He was only twenty-one years of age. Now, accepting the immediate cause of the decedent's going between the cars as the third supposition stated— that his signal to the engineer, interpreted by the engineer to go back was in fact meant by him to go forward—we have a case, not of contributory negligence, but of confusion of signals, due to the inexperience or ignorance of the decedent as a railway brakeman. Does the mistake of the decedent, due to inexperience or ignorance, exempt the railroad company from the consequences of having failed in its absolute duty of equipping the cars with safety devices, in a case where, had there been compliance with the law, the confusion and mistake would not have occurred?

I think not. In my judgment, the conclusion arrived at in the majority opinion is contrary to what Congress, in the Safety Appliance Act, intended should be a comprehensive safety precaution for all the operatives of the road—the inexperienced as well as the experienced—and contrary to what the Supreme Court intended to lay down in the Taylor Case, above quoted."

Upon this division of the Court, the judgment of the Circuit Court, under review at the previous hearing, was reversed, for the reason that the then plaintiff in error's motion for a directed verdict should have been sustained and the cause remanded for a new trial. It will thus be seen that, on the previous hearing, the case turned, in this Court, upon a question of law. Confessedly, there was no evidence offered, at the second trial, changing the facts to which this Court had applied the law.

The case must be reversed for failing to follow the instructions of this Court. What this Court said in its majority opinion, not its minority opinion, is the law of the case; and whatever the trial Court may have thought, respecting its soundness, it had no right to disregard the law as thus laid down. This Court might have certified the question of law to the Supreme Court; but this was not done. Defendant in error's remedy, under these circumstances, should she wish to question the judgment of this Court, is by application for writ of certiorari to the Supreme Court. That remedy still exists, but unless and until the Supreme Court issues its writ, what this Court has said, through its majority opinion, is the law of the case. The instruction asked for, by plaintiff in error, should have been given.

For the reason stated, the judgment of the Circuit Court is reversed and the cause remanded for a new trial.